**BOWATERS SOUTHERN PAPER CORP.**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION.**

Civ. A. No. 5351.

United States District Court
E. D. Tennessee, S. D.

May 5, 1969.

Witt, Gaither, Abernathy & Wilson, and John T. Henniss, Chattanooga, Tenn., and Constangy & Prowell, James F. Smith, Atlanta, Ga., for plaintiff.

David W. Zugschwerdt, Washington, D. C., and Office of U. S. Atty., Thomas A. Williams, Asst. U. S. Atty., Chattanooga, Tenn., for defendant.

## OPINION

FRANK W. WILSON, District Judge.

This is a proceeding under Subchapter VI, Equal Employment Opportunities, of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to § 2000e–15. Before the Court is a petition to set aside a demand for access to evidence and a cross-petition for an order enforcing the Equal Employment Opportunity Commission's demand for access to evidence. The case has been submitted upon admissions in the pleadings and upon affidavits. Oral argument was had pursuant to the Court's order to show cause and the case is now before the Court upon voluminous briefs filed by each party.

The relevant facts appear to be undisputed and they may be summarized as follows. Bowaters Southern Paper Corporation operates a large paper mill at Calhoun, Tennessee, wherein 1250 persons are employed. On July 19, 1967, Samuel Jackson, a member of the United States Equal Employment Opportunity

Commission, filed a charge with that Commission wherein he stated that he had reasonable cause to believe that Bowaters had engaged in unlawful employment practices in violation of § 703 of Title VII of the Civil Rights Act of 1963 (42 U.S.C. § 2000–2). The charge was filed pursuant to § 706 of the Act (42 U.S.C. § 2000e–5) as a means of initiating an investigation by the Commission. Since the legal sufficiency of the charge is a principal issue in the case, the charge will be set forth in full and it is as follows:

## COMMISSIONER'S CHARGE

Pursuant to Section 706(a) of the Civil Rights Act of 1964, I charge the following company with unlawful employment practices:

### BOWATERS SOUTHERN PAPER CORPORATION

Calhoun, Tennessee 37309

I have reasonable cause to believe said company is within jurisdiction of the Equal Employment Opportunity Commission and has engaged in the following unlawful employment practices:

1.  Maintainance of racially resricted job classifications.

2.  Discriminatory use of tests, restricting Negro employees to lower paying jobs.

3.  Denial to Negro employees of opportunity to participate in apprenticeship and on-the-job training programs.

JUL 19 1967
Date

s/   Samuel Jackson
Commissioner

———◆———

A copy of the charge was served upon Bowaters on August 18, 1967, and shortly thereafter an investigator for the Commission visited the Bowaters plant to undertake an investigation. At that time the representative of Bowaters insisted that the Company had at all times conducted its operations in full compliance with the law and attempted to obtain further information as to the nature and details of the alleged violation. The investigator was unable to provide anything further than that set forth in the charge. At that time certain requested information was provided the investigator, but in view of his inability to provide further details as to the basis of the charge, the representative of Bowaters requested an opportunity to consult with the Company's legal counsel before making available all of the requested records of the Company. There-after, on September 26, 1967, the attorney for Bowaters directed a letter unto the Commission investigator, in which letter he denied any discriminatory employment practices on the part of the Company, assured the Commission cooperation on the part of Bowaters in the investigation, but again requested further advice as to the source and nature of any alleged discriminatory employment practice in order that he might advise Bowaters with regard to the relevancy of the information requested. This letter was acknowledged by the investigator with the assurance that it would be given consideration.

However, nothing further appears to have occurred with regard to the investigation until August 3, 1968, when the Commission caused to be served on Bowaters a "Demand For Access to Evidence." This document is set forth in

full in a footnote,[1] it being sufficient here to state that the demand directed Bowaters to grant a Commission investigator access to substantially all of its personnel and employment records covering the period from January 1967 through January 1968.

Bowaters thereupon promptly filed with the Commission a document entitled "Motion To Set Forth and Produce Facts On Which Commissioner's Charge Is Based," in which it again requested further information in regard to the matters which form the basis for issuing the charge. This motion was denied by the general counsel for the Commission, it being his position that the filing of a charge was an individual right of a commissioner, that the charge as filed was legally sufficient, and that the charge accordingly was not subject to Commission review as requested in the motion.

Meanwhile, this action to obtain judicial review of the Commission demand for access to evidence was filed upon August 22, 1968, the same being filed pursuant to the provisions for such judicial review as contained in § 710 of the Act [42 U.S.C. § 2000e–9(c)], the petition being filed within the 20 day limitation provided therein. An answer and cross-petition was duly filed by the Commission seeking enforcement of its de-

---

1. The Demand for Access to Evidence requested access to the following information:
   1. A list of all persons presently employed at the Calhoun Plant, said list to include the following information for each employee:
      a. Name, address, and identity as to race.
      b. Departmental assignment.
      c. Job classification or title
      d. Plant, departmental, and job classification seniority dates.
      e. Rate of pay, including overtime compensation rate.
   2. A list of all employees hired by the Calhoun Plant between January 19, 1967, and January 19, 1968, said list to include the following information for each such employee:
      a. Name, address, and identity as to race.
      b. Departmental assignment.
      c. Job classification or title.
      d. Rate of pay, including overtime compensation rate.
   3. A list of all employees at the Calhoun Plant receiving promotions or job classification reassignments between January 19, 1967, and January 19, 1968, said list to include the following information for each such employee:
      A. Name, address, and identity as to race.
      b. Job classification and departmental assignment before promotion or reassignment.
      c. Job classification and departmental assignment after promotion or reassignment.
   4. Access for examination and copying of all applications for employment received, and employment tests given, at the Calhoun Plant between January 19, 1967, and January 19, 1968.
   5. A list of all employees filling temporary vacancies under Section V, Seniority, of the current collective bargaining contract between January 19, 1967, and January 19, 1968, said list to include the following information for each such employee:
      a. Name, address, and identity as to race.
      b. Job classification and department worked on the basis of a temporary assignment or transfer, and rate of pay, including overtime compensation rate.
      c. Job classification and department to which the transferred employee is normally assigned, and rate of pay, including overtime compensation rate.
   6. A written statement summarizing the criteria, other than seniority, applied in selecting employees to fill temporary vacancies under Section V, Seniority, of the current collective bargaining contract.

   And any like or related records relevant to an investigation of Charge No. CBI 68–12–312 alleging that Bowaters Southern Paper Corporation is engaging in unlawful employment practices at its Calhoun, Tennessee Plant by the maintenance of racially restricted job classifications, the discriminatory use of tests, resulting in the restriction of Negro employees to lower paying jobs, and denial of opportunities for participation in apprenticeship and/or on-the-job training programs to Negro employees.

mand for access to evidence. The case then proceeded to a hearing upon the Court's show cause order.

Upon this state of the record it is the contention of Bowaters that the Commission's demand for access to evidence is invalid and should be set aside for the following reasons:

(1) The demand is based upon an invalid charge in that (a) the charge fails to "set forth the facts upon which it is based" as is required by § 706(a) [42 U.S.C. § 2000e–5(a)] of the Act; and (b) the charge fails to make "a clear and concise statement of the facts constituting the alleged unlawful employment practice "as required by the Commission's own rules (29 C.F.R. 1601.11).

(2) The demand is invalid in that it seeks evidence, the relevance of which cannot be determined by the Court in the absence of any statement in the charge of facts upon which the charge is based, the Commission's investigative authority being limited by § 709 [42 U.S.C. § 2000e–8(a)] to the obtaining of evidence that is "relevant to the charge under investigation."

(3) Both the failure to set forth the facts upon which the charge is based and the broad scope of the demand violate Bowaters' right to be secure from unreasonable searches and seizures under the IV Amendment to the Constitution and their right to procedural due process, including the right to reasonable notice and the right to representation by legal counsel under the V Amendment to the Constitution.

(4) The evidence sought in the demand is unduly burdensome.

In response the Commission denies each contention of Bowaters and asserts that its Demand for Access to Evidence should be enforced by the Court. The Commission's position upon each contention of Bowaters is as follows:

(1) The demand should be enforced by the Court as a valid demand in that (a) it is based upon a charge that is valid both under the law and under the commission's own regulations; (b) the validity of the demand is not dependent upon the validity of the charge as the only function of the charge is to initiate a Commission investigation, so that the demand's validity is dependent only upon the investigative jurisdiction of the Commission as defined by statute; and (c) the sufficiency of the facts to support the charge addresses itself only to the discretion of the commissioner who makes the charge and the validity of the charge addresses itself only to the Commission, and neither of these matters is subject to judicial review.

(2) The evidence sought by the demand is within the investigative authority of the Commission and is clearly relevant to the suspected violations as stated in the charge.

(3) The demand violates no constitutional rights of Bowaters under either the searches and seizures provisions of the IV Amendment nor under the due process provisions of the V Amendment.

(4) The granting of access by the Commission to the evidence sought in the demand would not be burdensome unto Bowaters.

The purpose of the Equal Employment Opportunity subchapter of the Civil Rights Act of 1964 is of course to eliminate discrimination in employment based upon race, color, religion, sex, or national origin. In general this purpose is to be accomplished both by administrative and judicial proceedings, with the initial and primary responsibility for preventing and eliminating unlawful employment practices being vested in the Federal Equal Employment Opportunity Commission. The general procedure outlined by the Act is that upon the filing of a written charge of a violation of the Act, such charge to be filed either by an aggrieved person or by a member of the Commission, the Commission shall provide the suspect employer, employment agency, or labor union, as the case may be, with a copy of the charge and then undertake an investigation of the charge. In furtherance of its investigation the Commission may examine wit-

nesses, require the production of documents, and generally have access to relevant and material records in the possession of the person being investigated. Provision is made for a judicial review of any Commission demand for access to evidence, with provision for judicial relief from an unlawful demand and judicial enforcement of a lawful demand. Upon completion of the investigation, if two or more members of the Commission believe that reasonable cause exists for crediting the charge, the Commission must then endeavor to eliminate any such unlawful practice by informal methods of conference, conciliation and persuasion. Should these methods not be successful, provision is then made for judicial enforcement of the Act upon the initiation of a lawsuit for that purpose by the aggrieved party or parties or by the United States Attorney General, but not at the instance of the Commission.

Taking up first the contention of the parties with respect to the sufficiency of the charge and its relationship to the validity of the demand, these matters must initially be tested by the relevant statutory provisions authorizing a proceeding of the nature here involved.

The provisions of the Act relating to the filing of a charge are contained in § 2000e–5(a) Title 42 U.S.C.A., which provides in relevant part as follows:

> Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this subchapter has occurred (and such charge sets forth the facts upon which it is based) that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization * * * with a copy of such charge and shall make an investigation of such charge * * *. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

The Commission demand for access to evidence in this cause purports to have been made pursuant to § 2000e–9(a), which provides in relevant part as follows:

> For the purposes of any investigation of a charge filed under the authority contained in section 2000e–5 of this title, the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation. However, it would appear unto the Court that the authority for the demand in this instance is more properly contained in § 2000e–8(a), wherein it is provided:

> In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

The present petition to set aside the demand was made pursuant to § 2000e–9(c) of the Act, which provides in relevant part as follows:

> Within twenty days after the service upon any person charged under section 2000e–5 of this title of a demand by the Commission for the production of documentary evidence or for permission to examine or to copy evidence in conformity with the provisions of section 2000e–8(a) of this title, such person may file in the district court of the United States for the judicial district in which he resides, is found, or transacts business, and serve upon the Commission a peti-

tion for an order of such court modifying or setting aside such demand. * * * Such petition shall specify each ground upon which the petitioner relies in seeking such relief, and may be based upon any failure of such demand to comply with the provisions of this subchapter or with the limitations generally applicable to compulsory process or upon any constitutional or other legal right or privilege of such person.

And finally, the Commission's cross-petition for an order enforcing the demand is made pursuant to § 2000e–9(b) of the Act, which provides in relevant part as follows:

If the respondent named in a charge filed under section 2000e–5 of this title fails or refuses to comply with a demand of the Commission for permission to examine or to copy evidence in conformity with the provisions of section 2000e–8(a) of this title, * * * the United States district court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission, have jurisdiction to issue to such person an order requiring him * * * to comply with the demand of the Commission * * *.

It is on the basis of the foregoing statutory language that the principal attack is mounted by Bowaters on the validity of the demand here involved and that the principal defense against that attack is asserted by the Commission. In brief, it is the contention of Bowaters that § 2000e–5(a) of the Act makes the filing of a charge a prerequisite to the initiation of an investigation by the Commission and requires that the charge must "set forth the facts on which it is based." Bowaters contends that the charge here involved fails to set forth any facts upon which it purports to be based. In the absence of a charge which sets forth the facts upon which it is based, it is contended that neither Bowaters nor the Court can test whether the commissioner filing the charge had "reasonable cause to believe a violation

of this subsection has occurred" nor whether the evidence sought "is relevant to the charge under investigation". It is further contended by Bowaters that § 2000e–9(c) of the Act specifically authorizes the Court to set aside a demand whenever it is made to appear that it fails "to comply with the provisions of this subchapter or with the limitations generally applicable to compulsory process or upon any constitutional or other legal right or privilege of such person."

To the contrary, and likewise in brief, it is the contention of the Commission that not only does the charge here involved "set forth the facts on which it is based" but that once the charge was filed and accepted by the Commission and a Commission investigation begun thereon, the validity of the charge as being sufficient to initiate an investigation has thereby been established and this issue is not subject to further judicial review. The statutory requirement of "reasonable cause" for issuing the charge addresses itself to the discretion of the charging commissioner and need not be demonstrated in the charge other than by the act of the commissioner in signing the charge. Accordingly, neither "reasonable cause" nor the sufficiency of the charge is subject to judicial review. That the evidence sought by the demand in this case "is relevant to the charge under investigation" is clear and the Court may make this determination from the matters stated in the charge.

Amidst all of the conflicting contentions advanced by the parties in this cause and amidst all of the legal debate engaged in by astute and able counsel on each side, one sure and certain legislative fact stands out, and that is that Congress requires not only that a charge be filed as a prerequisite to the institution of an investigation by the Commission, but also that when a charge is filed by a commissioner it must "set forth the facts upon which it is based." The Commission makes most appealing arguments to the effect that Congress did not intend to introduce special pleading

requirements with regard to commissioner's charges; that pleading is generally held unimportant in administrative law and practice; that Congress intended no distinction between an aggrieved individual's charge and a commissioner's charge with regard to the inclusion of facts; that the very purpose of Congress in providing that charges may be filed by a commissioner was to avoid disclosure of the identity of individual complainants; and that the disclosure of supporting facts is not required under other legislation, such as the National Labor Relations Act, where charges are provided as a means of initiating an administrative investigation. Furthermore, the Commission appears to be on sound ground when it asserts that there would be no constitutional prohibition to Congress permitting investigations of corporate behavior based upon nothing more than official curiosity. United States v. Morton Salt Company, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1949). These matters, however, each direct themselves more to the wisdom or lack of wisdom of Congressional action than they do to what Congress in fact did, for in this instance Congress clearly stated that a commissioner's charge must "set forth the facts upon which it is based."

Insofar as the statutory issues raised in this case are concerned, the real issues for decision of the Court accordingly are whether (1) the charge in this case "sets forth the facts on which it is based" and (2) if it does not, whether the instant demand is thereby subject to be set aside on judicial review. One other statutory issue is raised by Bowaters and disputed by the Commission and that is the somewhat related issue of whether the charge must recite on its face the facts relied upon by the Commissioner as giving him "reasonable cause to believe" a violation had occurred. But this issue can appropriately await the decision of the foregoing matters as their resolution may be decisive of the case.

■ With regard to whether the charge here involved sets forth the facts upon which it is based, the Court is of the opinion that it does not. Admittedly a line cannot be clearly drawn delineating and distinguishing a charge from an allegation of fact. See 14 C.J.S. Character—Charge, p. 401 and 35 C.J.S. Fact p. 489. It is clear, however, that Congress, in using both terms, was expressing two concepts, and it is reasonable to assume that when Congress stated that the charge should set forth the facts on which is was based it intended the Commissioner to do just that. This does not necessarily mean that the identity of an informant must be disclosed, nor does it mean that the charges must necessarily be limited to the facts set forth in the charge. It does mean that a commissioner must show on the face of the charge that he was in possession of information which he believed to have some basis in fact and which therefore formed the basis for his initiating the charge. By requiring that a commissioner's charge set forth the facts on which it was based, it is apparent that Congress did not intend to authorize Commission investigations based on nothing more than official suspicion or curiosity.

■ In this case the Commissioner merely charged Bowaters with three general types of discriminatory practices: discrimination in job classification, discrimination in the use of tests, discrimination in the apprenticeship and on-the-job training programs. As to what facts the Commissioner may have had as a basis for making these charges, there is not a word in the charge. The Court is accordingly of the opinion that the charge failed to comply with the requirements of § 2000e–5(a) of the Act.

■ It is further clear from the statutory language that the filing of a valid charge is jurisdictional to the authority of the Commission to initiate an investigation. While the Commission's determination with respect to the validity of the charge is entitled to great weight by the Court, International Chemical Work-

ers Union v. Planters Mfg. Co., 259 F. Supp. 365, 366–367 (S.D.Miss, 1966); Cox v. United States Gypsum Co., 284 F.Supp. 74, 78 (N.D.Ind., 1968), and while, as stated by the Commission, the courts generally do not subject administrative jurisdictional determinations to judicial review unless the administrative action is plainly contrary to the clear language of the statute or is unconstitutional, American Fed. of Labor v. NLRB; 308 U.S. 401, 409–411, 60 S.Ct. 300, 84 L.Ed. 347 (1940), *affirming* 103 F.2d 933 (D.C.Cir., 1939); Madden v. Brotherhood and Union of Transit Employees, 147 F.2d 439, 158 A.L.R. 1330 (4th Cir., 1945), *reversing* 58 F.Supp. 366 (D.Md., 1944); Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), *affirming* 101 U.S.App.D.C. 398, 249 F.2d 490 (1957), *affirming* 148 F. Supp. 597 (D.D.C., 1956), it is clear in this instance that the Commission's jurisdictional determination was contrary to the statute. The charge being legally insufficient to invoke the investigative jurisdiction of the Commission, the demand here involved must be set aside.

The Commission has cited unto the Court an unpublished opinion from the Northern District of California in the case of Local No. 104, Sheet Metal Workers International Association, AFL–CIO, et al v. Equal Employment Opportunity Commission, 303 F.Supp. 528 (49,201 filed January 14, 1969), as authority in support of its contentions in regard to the validity of the charge in this case. In the cited case the Court did hold a general charge of union discrimination to be legally sufficient to support a demand for access to union records. Insofar as that case held a general or "pattern" charge of discrimination, as distinguished from a charge of individual discrimination, is valid under the Act, the opinion would appear to be sound. To the extent that the Court may have arrived at a different conclusion than stated in this opinion with respect to the necessity of setting forth the facts upon which the charge was based, this Court respectfully declines to follow the cited case. While it does appear that the Court in the above case did approve a somewhat similar general charge, the Court there omitted mention of the statutory language requiring that the charge set forth the facts upon which it was based.

Having concluded that the Commission was without jurisdiction to initiate the investigation here undertaken, because of the failure of the Commissioner's charge to state any facts on which it was based, the Commission's motion for enforcement of the Demand for Access to Evidence will accordingly be denied and the demand will be set aside.

An order will enter accordingly.