In re D. C. HUMAN RELATIONS COMMISSION

v.

NATIONAL GEOGRAPHIC SOCIETY, Appellant.

No. 71–1248.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1972.

Decided Feb. 13, 1973.

Arthur B. Hanson, Washington, D. C., with whom W. Frank Stickle, Jr., and Ralph N. Albright, Jr., Washington, D. C., were on the brief, for appellant.

Ted D. Kuemmerling, Asst. Corp. Counsel for the District of Columbia, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and WYZANSKI,* Senior United States District Judge for the District of Massachusetts.

WYZANSKI, District Judge:

December 27, 1968 the District of Columbia Human Relations Commission served upon the National Geographic Society a complaint alleging that the Commission had reasonable cause to believe that the Society was "discriminating against minority groups in its recruiting and hiring methods in ways which tend to deprive them of equal employment opportunities and such methods are in violation of Article 47 of the Police Regulations of the District of Columbia." September 4, 1970 the Commission, by amendment to the complaint, particularized the alleged violation.

November 24, 1970 the Commission served upon the Society a subpena *duces tecum* to produce twelve categories of information as follows:

1. All employment applications received in the last six months, including, but not limited to, those for applicants hired, rejected or pending.

2. A payroll list or printout of all employees on staff as of the first pay period in October, including, but not limited to, record of gross salary earned by each employee.

3. Job descriptions for all jobs, including, but not limited to, salary levels for each job.

4. Description of qualifications required for all jobs, including, but not limited to, educational requirements.

5. Copies of all employment tests administered, test manuals and copies of any validation studies made in connection therewith.

6. Copies of all correspondence with any recruitment sources utilized during the past year.

7. A copy of each employment application form used.

8. A copy of all personnel policies promulgated or circulated to employees.

9. An organization chart indicating number of employees in each organizational unit.

*Sitting by designation pursuant to 28 U.S.C. § 294(d).

10. A copy of any affirmative action plan, filed with any governmental agency.

11. All records relative to the establishment, scheduling and routing of the employees' bus service to the Gaithersburg facility.

12. Copies of any and all union contracts affecting employees.

The Society moved the District Court to quash the subpena. February 22, 1971 the District Court, without opinion, entered an order denying the motion to quash. The Society appealed.

Appellant's argument has five points.

■ 1. The Society contends that Article 47 of the Police Regulations of the District of Columbia, pursuant to which the Commission acted, was not published in the compilation allegedly required by the District of Columbia Administrative Procedure Act, and for that reason was not in effect at the time the subpena was issued. There is no merit to the point. In the July 27, 1970 Special Edition of the District of Columbia Register the District Government incorporated in the District of Columbia Register the District of Columbia Police Regulations. Such regulations were and are available for purchase at the District of Columbia Publications Office. The Register thus adequately informed its readers of the full text. Congress never contemplated more, for D.C.Code, § 1–1504(a) (Supp. IV, 1971) provides that although in general the Register shall set forth the full text, "the Commissioner may in his discretion omit from the District of Columbia Register rules the publication of which would be unduly cumbersome, expensive, or otherwise inexpedient, if, in lieu of such publication, there is included in the Register a notice stating the general subject matter of any rule so omitted and stating the manner in which a copy of such rule may be obtained." Full compliance with the conditions of this exception is not doubtful. But it is implausibly argued that the exception does not apply to regulations, such as these, which antedated

the October 21, 1969 effective date of D.C.Code § 1–1507 (Supp. IV, 1971). There is nothing in the language or policy of the act to support such an argument, which seems to us frivolous, especially since the Society admits that without difficulty or delay it immediately procured the relevant regulations when it wanted them.

■ 2. Next, the Society argues that the complaint, the amendment, and the subpena are invalid because the Commission failed to promulgate rules of procedure as required by the District of Columbia Administrative Procedure Act. However, April 15, 1971 the Commission promulgated and published rules of procedure. See 8 D.C.R.R. 1.1 et seq. The Society has not been prejudiced by the delay. It now knows all that it needs to learn of the procedure in order to answer the subpena. Even if we assume that such knowledge was a prerequisite to the enforcement, by a contempt proceeding, of the District Court's order, it certainly was not a prerequisite to the issuance of the subpena or to the entry of the District Court's order.

■ 3. Then, the Society claims that neither the complaint nor the amendment validly alleges a violation of Article 47 of the Police Regulations because the pleadings are not sufficiently specific. As Justice Frankfurter would have said, we have outgrown the formalism of Baron Parke. Modern cases fully support the sketchy nature of the instant complaint and amendment. Graniteville Co. (Sibley Div.) v. Equal Employ. Op. Com'n, 438 F.2d 32 (4th Cir., 1971); Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir., 1970); Bowaters Southern Paper Corp. v. Equal Employ. Op. Com'n, 428 F.2d 799 (6th Cir., 1970); United States v. Gustin-Bacon Div. Certain-Teed Prod., 426 F.2d 539 (10th Cir., 1970).

■ 4. Penultimately, the Society contends that the subpena is invalid because it was issued by the Executive Director of the Commission to whom the issuing power was not validly delegated.

Here again the appellant has presented a sleeveless argument. The subpena states that it was issued under the authority granted by D.C.Code, § 1–237 (1967). That statute authorized the former District of Columbia Board of Commissioners to issue subpenas. As of June 10, 1965, when the Board of Commissioners enacted Article 47 of the D.C. Police Regulations, heretofore mentioned, they specifically provided that defendant (then operating under the name of "Commissioners Council on Human Relations") "and its Executive Director shall possess the powers vested in the Commissioners by that Act." Authorization for the aforesaid delegation is conferred by Reorganization Plan 5 of 1952. (66 Stat. 824, D.C.Code, Title I, Appendix, 1967 ed.).

5. The Society's final point is that the District Court should have quashed the subpena because it is overly broad and oppressive, requires the Society to prepare and compile information, and demands items irrelevant to the complaint. We agree that on the record as it stands there is some merit to this point. We have no indication that either of the parties offered detailed argument to the District Court on any of the twelve categories of items to be produced, nor attempted to assess the relevance or the burden of the items. So far as appears, the parties treated the Court like the daysman on the shield of Achilles in the Iliad, that is, as an arbitrator limited to choosing between either one of two extreme positions but not free to form a wholly informed and truly independent judgment of the relevance of the items to the controversy and of the burdensomeness of compliance with the subpena. We do not suggest that the District Court should be placed in the laborious position of ruling, unasked, upon each detail of the subpena as it would rule upon a question to which objection was taken at a trial. Yet the procedure here followed in the District Court seems to us inconsistent with the brooding omnipresence of the Fourth Amendment and with the growing recognition of the wisdom of Justice Brandeis' remark that the Constitution "conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men." Olmstead v. United States, 277 U.S. 438, 478, 48 S. Ct. 564, 572, 72 L.Ed. 944 (1928).

Without suggesting that the Commission here was engaged in a fishing expedition or in a search pursuant to an ulterior, unacknowledged purpose, and while recognizing how much need there is in a matter of this kind for background and statistical data and how thorough must be the scrutiny of many items which in their individual aspect seem insignificant but which in their totality reveal a pattern, we are concerned lest the judiciary lend itself to rubber-stamping the demands of administrative agencies which naturally enough have a zeal and sense of righteousness commensurate with the importance of their mission and the difficulties of its accomplishment.

█ What we deem appropriate is for the Commission, when challenged, to prove to the trial court by argument, not necessarily nor usually by evidence, that its demands are proper and necessary. The burden of persuasion rests upon it. And the trial court has the duty, in a contested case, of making explicit its rulings, though, of course they may have an orotund generality, as is usual in discovery proceedings.

We conclude that in this case a remand to permit this procedure is required because at our bar the Corporation Counsel representing the Commission admitted that paragraph 11 of the subpena should be struck, and that the subpena does not make it clear that it is limited, as apparently intended, to positions within the District of Columbia. Furthermore, we are not clear, and our confusion seemed to be shared by counsel, as to what is the starting date of the information sought. In the event the parties are unable to agree on a reasonable starting date for the informa-

tion sought, the court shall fix the date. Whatever shape the subpena may have after it has been suitably tailored, it ought to bear the date of the final version.

Reversed and remanded.